IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALLISON CRAWFORD, on behalf of herself and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | )  Case No. CIV-23-541-D |
| v. | )<br>)<br>) |
| COMMERCIAL INSURANCE.NET LLC d/b/a TIVLY, | )<br>)<br>) |
| Defendant. | ) |

## ORDER

Before the Court are two related motions: (1) Defendant Commercial Insurance.Net LLC d/b/a Tivly's Motion to Strike Consent Forms Filed Out of Time [Doc. No. 42] (the "Motion to Strike"); and (2) Plaintiff's Motion to Accept Late Opt-In Consents to Join Collective Action [Doc. No. 43] (the "Motion to Accept"). Plaintiff filed a Response [Doc. No. 44][1] to the Motion to Strike, and Defendant filed a Reply [Doc. No. 46]. Defendant filed a Response [Doc. No. 47] to the Motion to Accept, and Plaintiff filed a Reply [Doc. No. 49]. Both motions are fully briefed, and, because they address the same issues, the Court considers them together.

---

[1] Plaintiff filed a "Memorandum in Opposition to Defendant's Motion to Strike Opt-Ins and in Support of Her Motion to Accept Late Opt-In Consents to Join Collective Action." Because the Motion to Strike and Motion to Accept involve closely related issues, Plaintiff combined "her brief in support of her motion with her brief in opposition to Defendant's motion." In citations, the Court will refer to this combined memorandum simply as "Pl.'s Memo."

Each motion stems from a disagreement between the parties over what a potential opt-in plaintiff was required to do with their consent form to become a part of this collective action and when they were required to do it. Defendant contends these individuals were required to *file* (through Plaintiff's counsel) their consent forms by the Court-ordered deadline. Plaintiff, on the other hand, contends these individuals were only required to *return* their consent forms to counsel or the claims administrator by the deadline. Based on this disagreement, Defendant moves to strike the purportedly untimely consent forms. Additionally, two individuals returned their consent forms after the Court-ordered deadline, thus making them untimely under either party's reading of the deadline. These two consent forms are the subject of Plaintiff's Motion to Accept.

## BACKGROUND

Plaintiff filed this collective action on June 19, 2023 alleging violations of the FLSA and Virginia overtime law. On January 16, 2024, after previously conditionally certifying this case as a collective action, the Court entered an order approving the parties' jointly proposed notice program, notices, and consent forms. Relevant here, the notice program proposed by the parties, and approved by the Court, stated as follows:

> The opt-in period will begin on the date notice is sent. The parties will file a joint notice stating the date the opt-in period has begun. It will run for 60 days. Opt-in notices must be returned to Plaintiff's counsel or the claims administrator or postmarked by the expiration of the 60 days.

*See* Joint Mot. for Order Approving Notice Procedure [Doc. No. 26] at 3. And the Court-approved notice stated, in relevant part, as follows:

> **If you would like to join this lawsuit, you must sign and promptly return the enclosed "Consent to Opt-In" Form within 60 days of receipt of this**

> **Notice by U.S. Mail, overnight mail, fax electronic form, or email.** You may use [the] enclosed pre-stamped, pre-paid envelope. The Consent to Opt-In Form must be sent to [the Claims Administrator][.]
>
> If you do not sign and return the Consent to Opt-In Form within [DATE: 60 days from mailing], you may not be able to participate in this lawsuit.
>
> \*\*\*
>
> To join this lawsuit, you must sign and promptly return the enclosed "Consent to Opt-In" Form within [DATE: 60 days from mailing].

Joint Mot. for Order Approving Notice Procedure, Ex. 1 [Doc. No. 26-1] at 3-4 (emphasis and brackets in original).

The claims administrator, Simpluris, sent notice to potential opt-ins on April 5, 2024, thus beginning the 60-day period that the parties refer to as the "opt-in period." Therefore, pursuant to the Court's order approving the notice program, potential opt-ins had until June 4, 2024 to return their consent forms. After Simpluris received a consent form, it periodically emailed the forms to Plaintiff's counsel, along with a list of individuals who had returned the forms.

In total, 141 consent forms have been returned. As of June 4, 2024—the final day of the opt-in period—Simpluris had provided Plaintiff's counsel with 105 forms, and Plaintiff filed all 105 with the Court (even though Plaintiff maintains there was no deadline for her to do so). 34 more consent forms were returned to Simpluris by June 4, 2024 but were not filed with the Court by that date. Of those 34 forms, 33 were filed on July 8, 2024. On July 22, 2024, Simpluris informed Plaintiff's counsel it had located another consent form that had been received by June 4, 2024 but, due to an oversight, it had failed to disclose to counsel. Plaintiff filed that consent form simultaneously with her Memorandum

on July 22, 2024. Last, two consent forms were returned to Simpluris after June 4, 2024, and Plaintiff filed those on July 2, 2024. All told, the breakdown of consent forms appears to be as follows:

| Number of Consent Forms | Returned to Simpluris by end of opt-in period (*i.e.*, June 4, 2024)? | Filed with the Court by end of opt-in period (*i.e.*, June 4, 2024)? | Does Defendant object to these individuals being included in the collective action? |
|---|---|---|---|
| 105 (part of the Timely Opt-Ins) | Yes | Yes | No |
| 33 (part of the Timely Opt-Ins) | Yes | No (filed July 8, 2024) | Yes, because they were not filed with the Court by June 4, 2024 |
| 1 (part of the Timely Opt-Ins) | Yes | No (filed July 22, 2024) | Yes, because it was not filed with the Court by June 4, 2024 |
| 2 (the Untimely Opt-Ins) | No | No (filed July 8, 2024) | Yes, because they were neither returned to Simpluris nor filed with the Court by June 4, 2024 |
| Total: 141 | | | |

## DISCUSSION

### I.   The Timely Opt-Ins

Defendant argues that the Court should strike the 34 consent forms identified in the table above that were received by Simpluris but not filed with the Court by June 4, 2024 (*i.e.*, rows 2 and 3). At bottom, Defendant contends that, although the Court-approved notice program and notice do not mention a filing deadline, it was understood that Plaintiff

4

was required to file the consent forms by June 4, 2024. And this sort of reading of the opt-in deadline, according to Defendant, has been enforced by other courts facing a similar situation.

Plaintiff, on the other hand, relies on the plain language of the notice program and notice in arguing that there is no such filing deadline. Instead, Plaintiff maintains that the Timely Opt-Ins missed no deadlines and "timely returned their consent forms to the claims administrator, and the forms were promptly filed by counsel after receiving them from the claims administrator, in compliance with both the wording and spirit of the Court approved Notice Program." Pl.'s Memo. at 10.

Upon consideration, the Court concludes that the 34 Timely Opt-Ins complied with the Court-approved notice and notice program and, therefore, are not untimely. Although the Court agrees with Defendant that the opt-in deadline in a collective action could be understood to be a filing deadline, the caselaw is far from establishing a hard-and-fast rule. Perhaps more importantly, the Court's Order in this case did not include an explicit filing deadline. Instead, it required potential opt-ins to complete their consent form and return it within the 60-day opt-in period. In the Court's view, it would be unfair to the Timely Opt-Ins—who indisputably returned their consent forms within the opt-in period—to exclude them from this action when they complied with the letter of the Court's Order.

The Court also notes that the notice program, notices, and consent forms were submitted to the Court on a joint basis. As the Court assumed at the time, Plaintiff states that Defendant "participated in the drafting of the Notice Program and Notice and included no deadline for filing." *See* Pl.'s Memo. at 4. If Defendant wanted an explicit filing deadline

5

included, as opposed to the language it jointly submitted to the Court, it could have done so (or, at the very least, raised the issue with Plaintiff during the parties' drafting process).

In sum, the Court concludes that the 34 Timely Opt-Ins complied with the Court's Order adopting the parties' notice program and notice and, therefore, should be included in this collective action.[2]

## II. The Untimely Opt-Ins

The Court now moves to the two Untimely Opt-Ins—*i.e.*, the two consent forms identified in the fourth row of the above table that were neither returned to Simpluris nor filed with the Court by June 4, 2024. Plaintiff maintains "ample ground exists for" accepting the Untimely Opt-Ins. She argues there is "no prejudice to Defendant; the consents were returned only one or two days after the deadline . . .; the interests of judicial economy are best served by allowing the late opt-in Plaintiffs to participate in this case; allowing the late opt-in Plaintiffs is consistent with the remedial purposes of the FLSA; and a generous reading is appropriate when considering issues of time limits and deadlines." *Id.* at 11. Further, Plaintiff's counsel states that, if the Court does not allow the Untimely Opt-Ins to join this collective action, he intends to file "a new FLSA action on their behalf." *Id.* at 15. This, Plaintiff contends, "makes little sense," as those claims are already before the Court in this action. *Id.*

In response, Defendant argues that Plaintiff comes markedly short of demonstrating that good cause exists to accept the Untimely Opt-Ins. *See* Def.'s Resp. in Opp. to Mot. to

---

[2] Even if the Court concluded that the Timely Opt-Ins had missed a deadline, it would allow them to join this collective action for the reasons discussed in Section II.

Accept at 4. Specifically, Defendant contends "action (or inaction) of [Plaintiff's] hand-picked claims administrator, who reported an 'unforeseen delay' in providing the forms to plaintiff" does not constitute good cause. *Id.* Further, Defendant argues it was "entitled to rely on the size of the collective action participants as of June 4, 2024," but that number—105—was significantly lower than the number of potential opt-ins later disclosed by Plaintiff. *Id.* at 6. That increase in number, Defendant continues, constitutes prejudice because Defendant will now have to defend against a collective action 34% greater in size than originally anticipated. *Id.* And last, Defendant argues judicial economy is not served by allowing the Untimely Opt-Ins because at least some of their claims are time-barred anyway. *See id.* at 7.

Upon consideration, the Court concludes that the two Untimely Opt-Ins should be permitted to join this collective action.[3] Although a close call, the Court concludes that the "inadvertent administrative oversight by Simpluris" constitutes good cause. *See* Pl.'s Memo, Ex. 1 [Doc. No. 44-1], ¶ 8. To be sure, it could be argued that Plaintiff's counsel should have been more diligent in following up with Simpluris. But it appears to the Court that Simpluris had been consistent in timely providing Plaintiff's counsel with consent forms up to that point. Therefore, it appears reasonable for Plaintiff's counsel to have assumed he had in his possession all consent forms returned to Simpluris.

---

[3] The Court agrees with Defendant that the procedurally correct way for Plaintiff to have approached the issue would have been to file a motion for leave to file the Untimely Opt-Ins' consent forms out of time. However, given the parties' disagreement over the correct deadline, the Court declines to punish Plaintiff for her failure to strictly follow a specific procedural timeline. The Court advises the parties that future requests to submit untimely filings should come by way of a motion for leave.

Even assuming Plaintiff could not demonstrate good cause, however, the Court finds that other relevant factors weigh in favor of allowing the Untimely Opt-Ins. *See Howard v. Centrinex,* LLC, No. 15-9918-JWL, 2016 WL 5410056, at *1 (D. Kan. Sept. 28, 2016) ("Defendant correctly states that plaintiffs have not attempted to show excusable neglect for the failure of these four individuals to return their consent to join forms by the August 2, 2016 deadline. Nonetheless, the court is persuaded that other relevant factors weigh in favor of allowing these late submissions."); *see also Heaps v. Safelite Solutions, LLC*, No. 2:10–cv–729, 2011 WL 6749053, at *2 (S.D. Ohio Dec. 22, 2011) ("Although Plaintiffs have offered no good cause for their failure to timely file these consent forms, all of the other factors weigh in their favor."); *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009) (same).

First, because the Court concludes the 34 Timely Opt-Ins were not untimely (as argued by Defendant), there is little prejudice to Defendant in allowing the two Untimely Opt-Ins to join a collective action already containing 139 individuals. Second, the Untimely Opt-Ins both returned their consent forms within days of the June 4, 2024 deadline. Third, judicial economy is best served by allowing the Untimely Opt-Ins to participate in this collective action, as opposed to making them file separate, standalone actions.[4] Moreover, there is no scheduling order in this case, and it appears the parties have conducted little, if any, discovery. Fourth, the remedial purposes of the FLSA are best served by allowing the

---

[4] As Plaintiff notes, the parties previously executed a tolling agreement, thus undercutting Defendant's argument that some of the potential opt-ins' claims are time-barred.

8

Untimely Opt-Ins—individuals who clearly sought to join this action but were a day or two late in seeking to do so—to join this collective action.

In sum, the Court finds that Plaintiff has narrowly demonstrated good cause exists for the untimely consent forms, and, even if Plaintiff had not demonstrated good cause, other relevant factors support permitting the Untimely Opt-Ins to join this collective action.

## CONCLUSION

For these reasons, the Court finds that the notice and notice program contained no deadline by which Plaintiff was to file consent forms. Instead, potential opt-ins were required to return their consent forms by June 4, 2024—nothing more. Additionally, the relevant factors discussed above counsel in favor of allowing the two individuals who did not timely return their consent forms to join this collective action.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike [Doc. No. 42] is **DENIED**, and Plaintiff's Motion to Accept [Doc. No. 43] is **GRANTED**.

**IT IS FURTHER ORDERED** that, <u>**within 14 days of the date of this Order**</u>, Plaintiff shall file a notice containing a comprehensive and final list of all opt-in plaintiffs. The list shall be limited to the 141 individuals discussed in this Order.

**IT IS SO ORDERED** this 3rd day of September, 2024.

TIMOTHY D. DeGIUSTI
Chief United States District Judge